Delores PRUITT, Administratrix of the Estate of Bill J. Pruitt, Deceased, Libelant,

v.

The M/V PATIGNIES, her engines, boilers, etc., Cie, Belge D'Armament, S.A., a foreign corporation; U.-B.-E.-M., a foreign corporation; Marvin Wingerter; Beverly Gene Ferrell, Respondents,

and

Martin James Monroy and Otila Hale, Administratrix of the Estate of Thomas Wade Hale, Deceased, Impleaded Respondents.

Otila HALE, Administratrix of the Estate of Thomas Wade Hale, Deceased, Cross-Libelant,

v.

The M/V PATIGNIES, her engines, boilers, etc., Cie, Belge D'Armament, S.A., a foreign corporation; U.-B.-E.-M., a foreign corporation, Cross-Respondents.

Marvin WINGERTER, Beverly Gene Ferrell, Otila Hale, Administratrix of the Estate of Thomas Wade Hale, Deceased, and Martin James Monroy, Respondents, Impleaded Respondents and Cross-Libelants,

v.

The M/V PATIGNIES, her engines, boilers, etc., Cie, Belge D'Armament, S.A., a foreign corporation; U.-B.-E.-M., a foreign corporation, Respondents and Cross-Respondents.

Marvin WINGERTER, Beverly Gene Ferrell, Otila Hale, Administratrix of the Estate of Thomas Wade Hale, Deceased, and Martin James Monroy, Respondents, Impleaded Respondents, Cross-Libelants and Third-Party Libelants,

v.

John BOWIE, Third-Party Respondent,

The **AETNA CASUALTY AND SURETY COMPANY**, a Connecticut Corporation, Subrogee of Marvin Wingerter, Libelant,

v.

The **M/V PATIGNIES**, her engines, boilers, tackle, etc.; **Cie, Belge D'Armament, S.A.**, a foreign corporation; **U.-B.-E.-M.**, a foreign corporation, Jointly and Severally, Respondents.

Nos. 27046, 27427.

United States District Court
E. D. Michigan, S. D.
April 14, 1967.

Robert A. Jenkins, Scholl, Jenkins, Robinson & Stieg, Martin M. Miller, Milan & Miller, Detroit, Mich., for Delores Pruitt.

John A. Hamilton, Foster, Meadows & Ballard, Detroit, Mich., for M/V Patignies and Cie, Belge D'Armament.

Kenneth C. Davies, Hamilton Robichaud, Detroit, Mich., for Marvin Wingerter, Beverly Gene Ferrell and Martin James Monroy in No. 27046 and for Aetna Casualty and Surety Co. in No. 27427.

Charles R. Wilson, Ostrowski & Wilson, Detroit, Mich., co-proctors for Marvin Wingerter.

Peter O'Rourke, Porritt, Hegarty & O'Rourke, Detroit, Mich., for Otila Hale.

Robert W. Appleford, Hill, Lewis, Adams, Goodrich & Powers, Detroit, Mich., for John Bowie.

OPINION

FREEMAN, Chief Judge.

This case arises from a collision in the Detroit River between the M/V Patignies, a Belgian freighter, and the Seventh Angel, a small pleasure craft. Taking account of only those facts which are necessary for an understanding of the present issue, it suffices to say that the administratrix of the estate of one of the passengers who died aboard the Angel

brought suit against, among others, the owners of the two vessels. She alleges negligence as her grounds for recovery.

■ ■ The sole concern at this time is whether, despite opposition to disclosure, one defendant, the owner of the M/V Patignies, can discover the limits of the personal injury liability coverage on the Seventh Angel, whose owner is a co-defendant. The point is raised by a motion for production of the relevant insurance policy.[1] Federal Rule of Civil Procedure 34 authorizes an order requiring production of documents only if they "constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) * * *." Rule 26(b), dealing explicitly with depositions, states:

> "Unless otherwise ordered by the court * * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The logical converse of the latter proposition of Rule 26(b) is that a question may not be asked over objection if it does not appear reasonably capable of leading to the discovery of admissible evidence, despite the fact that in some manner or another it may be related in a broad sense to the subject of the litigation. Counsel for the M/V Patignies admits that the requested information is not competent evidence and cannot open avenues to any. Therefore, in light of the Federal Rules, the result seems clear: policy limits need not be made known. See e. g., Cox v. Livingston, 41 F.R.D. 344 (S.D.N.Y.1967); Berry v. Haynes, 41 F.R.D. 243 (S.D.Fla.1966).

However, the fact remains that a substantial number of judges have permitted discovery in similar situations where one party's curiosity toward another's insurance coverage is excited only by the desire to determine, in the words of the same attorney, "what's on the other side of the table" when it comes time to discuss settlement. None of the reasons commonly put forth by these courts obviates the difficulty posed by Rule 26 (b). Furthermore, none rests upon convincing logic or, in the vast majority of instances, upon persuasive policy. A discussion of the more often cited grounds follows.

■ 1. The Federal Rules should be construed to secure the just, speedy, and inexpensive determination of every action. E. g., Hill v. Greer, 30 F.R.D. 64 (D.N.J.1961).

■ One can hardly quarrel with the statement. See Fed.R.Civ.P. 1. However, he can take issue with its applicability to the question. In legal parlance, a provision requires construction when its meaning is in doubt. Where the import is clear to a court, it need not inter-

---

1. Actually, the motion was filed not in the suit brought by the widow but in a subsequent companion case against the M/V Patignies commenced by the insurer of the Seventh Angel as subrogee, seeking to recover for hull damage to the small boat. This same carrier also wrote the personal injury liability coverage for the owner of the Angel. From the oral argument it appears that none of the parties objects to considering the matter as having been presented in the earlier suit where it obviously belongs. Furthermore, no objection was made that good cause for production has not been shown because the information sought, if discoverable at all, could be obtained through another means. See generally Herrick v. Barber Steamship Lines, Inc., 41 F.R.D. 51 (S.D.N.Y. 1966).

While technically disclosure was requested by a codefendant, admittedly plaintiff is also interested in the outcome of this matter. Therefore, whatever portions of the text appear specifically applicable to a case in which a claimant seeks disclosure are not inappropriate here.

pret but only follow or rewrite.[2] Moreover, for reasons which appear more fully below, there is with rare exception no basis for believing that policy limits disclosure facilitates just resolutions of lawsuits.

2. Financial responsibility laws evidence a great public interest in insurance policies. E. g. Johanek v. Aberle, 27 F.R.D. 272 (D.Mont.1961).

Undoubtedly, this type of legislation does demonstrate some public concern regarding liability insurance. Nevertheless, typically the extent of the community's interest has been severely circumscribed by the legislature, for the statute will normally require only a fixed minimum coverage. Therefore, the most that compulsory insurance laws can realistically support is a ruling that a party must indicate whether he has purchased the least amount of protection necessary. Even this reasoning is inapplicable here, however, because no pertinent Michigan act deals with boats or their operators.

3. An insurer by virtue of its directing the course of litigation is intimately involved in the usual case where the issue of policy limits disclosure arises. E. g., Johanek v. Aberle, supra.

According to this view, of course, it seems that the defendant in any case should be made to disclose the nature and extent of all his holdings. However, this conclusion is said not to follow because insurance is different from other kinds of assets in that it is specifically designed to pay accident claims. See Johanek v. Aberle, supra. There may be some validity in the attempt to distinguish between insurance and other resources on this ground insofar as a policy's meeting the terms of a compulsory insurance law is concerned. On the other hand, liability coverage greater than the mandatory minimum differs from other types of assets only in that it, just like life or accident insurance, is tailored to protect a standard of living rather than to directly enhance it. Insureds do not purchase excess protection on account of any humanitarian or donative feeling toward persons they may someday injure. Furthermore, it is completely unreasonable to say that another's liability insurance is intended to pay off the victim of a mishap where one of its counterparts such as workmen's compensation, although unquestionably purchased to protect injured parties, because of subrogation may not have to bear a similar burden.

2. There is a remarkable tendency on the part of courts which compel policy limits disclosure to de-emphasize the last sentence in Rule 26(b), stating that a valid objection to a discovery question does not exist where the query appears capable of leading to admissible evidence. For example, the court in Johanek v. Aberle, 27 F.R.D. 272 (D.Mont.1961), stated that the "primary question presented is whether the matter of the existence, terms and limits of automobile liability insurance is 'relevant to the subject matter.'" There can be no doubt but that all the language in Rule 26(b) was designed to be read together. The notes of the Advisory Committee on Amendments to the Federal Rules accompanying the 1946 addition of this final sentence state:

"The amendments to subdivision (b) make clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. * * * *Of course, matters entirely without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry.* * * * (Rule 26 contemplates 'examinations not merely for the narrow purpose of adducing testimony which may be offered in evidence but also for the broad discovery of information which may be useful in *preparation for trial.*')" (Emphasis supplied.)

It is interesting to note that the draftsmen of the New Jersey procedural code, after they had adopted verbatim the final sentence of Rule 26(b), added a provision specifically authorizing policy limits disclosure in negligence cases. See N.J.Ct.R. 4:16–2.

While the insurance theory is reduced to practice by an insurer's compensating an accident victim, payment is not made merely because the injured party has a claim but in most states because he has successfully reduced his demand to a judgment against the insured. The significance of this secondary nature of a carrier's liability challenges the wisdom and points up one of the dangers in breaking the tradition in ordinary negligence cases, that assets need not be revealed before verdict, to compel a party to divulge the extent of his coverage. An inquiry aimed at determining an opponent's worth is designed to assist in making, as the popular euphemism has it, an honest evaluation of the lawsuit. However, the figure reached on the basis of policy limits—and the one which, once established, may well have to be met if a trial is to be avoided—could be overly optimistic where, as not infrequently happens, the insurer eventually exercises its right to disclaim responsibility to the insured despite the fact that it participated in the litigation. An evaluation meaningful to a claimant and fair to his adversary can result only if discovery is expanded to take in the whole subject of policy defenses.

4. Insurance coverage is relevant in post-judgment proceedings. E. g., Furumizo v. United States, 33 F.R.D. 18 (D.Haw.1963).

Courts which state this proposition to justify requiring policy limits disclosure presumably have in mind procedures by which a victorious accident plaintiff can garnish a defendant's carrier. However, in light of the above discussion regarding the real nature of insurance protection, their approach is untenable unless one is prepared to admit that the full extent of an opponent's wealth is a pertinent subject of discovery—and in any type of litigation. His bank account can just as easily be attached if he loses.

5. Disclosure promotes settlement. E. g., Cook v. Welty, 253 F.Supp. 875 (D.D.C.1966).

Apart from the observation that there is no evidence that the discovery rules were formulated to facilitate settlements when they cannot at the same time serve to make trials less burdensome while much to the contrary can be found,[3] there is considerable conflict of opinion whether, as a matter of principle, knowledge of insurance coverage actually expedites or hinders settlements. While Judge Holtzoff in *Cook* thought that there could be no doubt that discovery toward this end aids negotiations, others find the proposition highly debatable. See e. g., Hillman v. Penny, 29 F.R.D. 159 (E.D. Tenn.1962). An experienced lawyer can appreciate that if coverage is determined to be less than was first thought, a vindictive plaintiff would force a trial largely with the hope of hurting a defendant as much as possible. More important, it is not difficult to envision the case of an average plaintiff who, upon discovering that his defendant has more extensive insurance protection than anticipated, refuses to settle for the amount upon which he once would have been willing to agree, with the result that negotiations are at least prolonged if not actually terminated because the newer figure is higher than that representing what the insurer honestly feels is the value of the claim. At this point may arise a serious situation which highlights the fact that the person who apparently caused the injury is the real defendant and, as such, stands to suffer far more than the uncomplimentary comments made about him in the complaint. Where the revelation of $30,000 coverage, for example, causes a plaintiff to set his final demand at $25,000, a large carrier has virtually nothing to lose, at least in the short run, by going to trial. However, should the jury find liability, a verdict less than $30,000 is hardly more predict-

3. See note 2 supra.

able than one above this figure. Any overage, of course, is the defendant's problem. He must pay it or live with it, and his only consolation is the availability of another lawsuit in which, if he is fortunate, he may convincingly argue that the insurer breached its duty to defend his interest in the first action when it refused to settle.

Furthermore, a claimant is not the only person who stands to gain from a large recovery in the average case in which the question of discoverability arises. His lawyer also has a significant interest in the outcome. It must be recognized that an attorney might even urge a client to press for a more substantial settlement than the victim himself would demand once it appears that solvency is no longer an issue. Whatever the merit of Judge Holtzoff's view that "refusal to require disclosure would help perpetuate 'the sporting theory of justice,'" it appears that discoverability is bound to lend assistance to the predatory concept of law practice.

A court exists to provide a forum for litigants to air their differences regarding their respective rights. In light of its purpose, its principal concern must be not merely terminating disputes as quickly as possible but resolving them on their merits untainted by extraneous factors. Even if disclosure does promote settlements in certain cases, the above discussion suggests that they may well be reached by taking advantage of the peculiar weakness of the carrier, the one participant in the proceedings clearly not responsible for the claimant's injury, which must guard at least its reputation by doing the utmost to defend an insured against a judgment surpassing policy limits. If, in the overall judicial

scheme, avoiding trials were so important and settlement at any price were a sound principle, it should be employed at every opportunity, including, for instance, the one presented by a plaintiff laboring under unusual hardships who seeks an advanced hearing date so that he has a practical alternative to simply accepting whatever a defendant offers.

6. Disclosure assists "fair and just" settlements. E. g., Cook v. Welty, supra.

A settlement is truly just if it gives a party compensation proportional to his losses—albeit discounted to an extent where there is some reasonable doubt regarding liability. A proper ratio between injury and amount is also the crucial element in an equitable money verdict. Nevertheless, as the Court in *Cook* emphasized, regardless whether policy limits are discoverable to aid negotiations, they are not—and should not be—admissible to help a jury reach its conclusion. Thus, it is difficult to see how the phrase "fair and just" is supposed to add more than ill-founded emotional appeal to the fundamental argument, already shown to be unacceptable to this Court, that disclosure promotes settlement.

Even if policy considerations rather than the dictates of Rule 26(b) were controlling so that there were room for emotional reactions to play a part in the decision of a question of this nature, an effort to balance the competing interests would suggest that disclosure be compelled only in the unusual situation where liability is admitted and a victim's claim seems to be both substantial and in excess of a defendant's apparent worth apart from his insurance coverage. See Rosenberger v. Vallejo, 30 F.R.D. 352 (W.D.Pa.1962).[4]

4. Of course, there may be other select instances in which one viewing the scene objectively would have to conclude that policy limits disclosure would lead to an honest settlement not the result of undue pressure or questionable tactics. However, the very docket loads which discovery is supposed to reduce make it difficult for a judge to know well enough the interests and motivations of all the attorneys and litigants before him to predict with confidence that a given case will fall into this category.

The owner of the Seventh Angel need not divulge the extent of his insurance protection.

An appropriate order may be submitted.