## Cipparone v. Kosloski

*Edward W. Furia*, for plaintiff.

*Edward B. Broderick*, for defendant.

WEINROTT, J., May 5, 1969.—The issue before the court is the propriety of a pretrial interrogatory addressed by plaintiff to defendant in an automobile accident case seeking discovery as to defendant's possible insurance coverage.

Plaintiff filed 16 questions in a discovery proceeding. Defendant objected to questions numbered 13, 14, 15 and 16. Plaintiff's brief states that the first three

of these questions are withdrawn. We are left with the sixteenth question:

"16. State (a) whether any liability or property damage insurance was carried by the owner or driver of any vehicle of any defendant involved in said occurrence, or by the employer of any such owner or driver, and if so, (b) the name and address of the policyholder of every such policy, (c) the name and office address of the insurance company which issued every such policy, (d) the limits of coverage of every such policy."

Defendant's objection asserts that the quoted interrogatory violates Pennsylvania Rules of Civil Procedure 4007(a) and 4011(a) through (e); that it is improper, irrelevant and immaterial; and that the matter is not the proper subject of discovery proceedings.

Our judgment is that the objection should be sustained.

The topic has not yet been taken to either of our Pennsylvania appellate courts. A number of lower courts have passed upon it, with conflicting results. The three district courts of our Pennsylvania Federal system have considered the question, with an equal number of divergent views. In other States and in other Federal jurisdictions the matter has been the subject of much debate, and has created a distinct split of authority. A discussion of the various theories and a listing of jurisdictions going both ways will be found in a comprehensive annotation in 13 ALR 3rd at pages 822-843 (1967). A brief but illuminating summary of theories appears also in an article, "Pre-Trial Discovery of Insurance," by William D. Hand, Jr., a New York City attorney, in The Forum, Vol. 3, pages 310-316 (July 1968).

Influencing the conflicting decisions are the nature of the particular discovery rules in the jurisdiction

and the policies favored by the particular court. The most liberal provisions are those of the Federal Rules of Civil Procedure. The one in which we are interested is Rule 26 (b) :

"Unless otherwise ordered by the court . . . the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . *It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.*"

We have emphasized the last sentence because it does not appear in the Pennsylvania rules, and is absent from similar rules in several States. The provision thus makes the Federal rules broader than a number of state rules modeled upon them. The greater breadth should be borne in mind in evaluating decisions under state rules including our own.

Our own pertinent discovery rules are the Pa. R.C.P. 4005, 4007, 4011 and 4020. The first permits interrogatories to an adverse party "Subject to the limitations provided by Rule 4011," on "any matters which can be inquired into under Rule 4007," with use of the answers "to the same extent as provided in Rule 4020. . . ." Pennsylvania Rule of Civil Procedure 4007 (a) permits examination of a party or witness, inter alia, "regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case." Rule 4011 forbids discovery, inter alia, which "is sought in bad faith, causes unreasonable annoyance . . . , (or) relates to any matter which is privileged." Rule 4020 permits depositions to be used at trial "so far as admissible under the rules of evidence," and permits objection "for any reason which would require the exclu-

sion of the evidence if the witness were then present and testifying." The latter provision speaks of "depositions" but rationally must apply as well to answers elicited by interrogatories.

From those rules we derive these conclusions pertinent to our problem:

(1) A party may interrogate his adversary before trial on topics which (a) are not privileged, (b) are relevant to the subject matter of the suit, and (c) will substantially aid in preparing pleadings, preparing for trial, or trying the case; and (2) the information elicited may be used at the trial only if the rules of evidence permit.

Let us apply those principles to the topic of insurance coverage. First, is it privileged? We would rule that it is; but let us assume it is not. It still has to meet the requirements that it be relevant to the subject of the suit and that it aid in preparation or trial. Definitely, it cannot be used at the trial; a mere mention of the existence of insurance to the jury is cause for a mistrial: Trimble v. Merloe, 413 Pa. 408 (1964). The fact that it cannot be used at the trial, of course, does not of itself answer our question. But how does the insurance coverage relate to the subject of the suit? How does it help in preparing pleadings, or in getting ready for trial, or in actually trying the case?

Any relation it has, of course, is not legal but practical. Conceivably a busy negligence specialist will refuse to undertake a case if he knows there is no insurance—unless he learns that defendant is financially responsible apart from insurance. Conceivably also a lawyer who does undertake an accident case may skimp his preparation if he learns that insurance is either absent or low in amount.

Should those considerations motivate a court in deciding whether or not the discovery rules call for disclosure of insurance coverage? Our own answer is negative.

Another practical element obtrudes itself. The negligence lawyer may well wish to know how much insurance defendant carries as a factor in evaluating his case for settlement. (A judge conducting a pretrial settlement conference may want the same information for the same purpose.) In cases where insurance coverage is high, however, defense counsel is likely to oppose disclosure for fear that plaintiff may exaggerate his claim in line with the high coverage.

It is on that rock that some of the decisions split. On one side is the view that where coverage is low, plaintiff's attorney will revise his claim downward, settle the case and reduce court congestion. On the other side is the view that high coverage leads to inflation of claims, makes settlement more difficult, and increases rather than alleviates congestion.

As a practical matter those views offset each other. Both possess logic; but how can it be known in advance of the court's decision whether insurance is high or low? And are the discovery rules designed with promoting or hindering settlements as a guideline?

Actually, the objects of the discovery procedure have been stated to be threefold: first, to narrow the issues; second, to obtain evidence for use at trial, and third, to secure information as to the existence and source of evidence that may be used at the trial: Vol. 2A, Barron & Holtzoff, Federal Practice and Procedure, sec. 641, at p. 10 (1961). To those objects we would add the purpose expressly stated in our Pa. R.C.P. 4007, to obtain information needed to prepare pleadings.

None of those purposes, and nothing explicitly stated in the rules, include the promotion of settlements or the relief of court congestion. It might be mentioned that recently at Harrisburg the State House of Representatives voted down two-to-one a bill that would have commanded disclosure of liability insurance in bodily injury or death suits.

One argument advanced for disclosure is that since after obtaining judgment a plaintiff is entitled to discovery of the defendant's assets, including insurance, he should be equally entitled to be informed of insurance coverage before trial: Maddox v. Grauman, 265 S.W. 2d 939 (Ky. 1954). An example of the opposite view is Gallimore v. Dye, 21 F.R.D. 283 (E.D. Ill. 1958).

In the latter case the court pointed out (21 F.R.D. at page 285) that if plaintiff may discover liability coverage prior to judgment, "then it could logically follow that he should be permitted the same latitude in discovery of the defendant's other assets. . . ." Hence, the court said, anyone wishing to ascertain the assets of another person need merely conjure up a claim, file suit and propound interrogatories. Since court records are open to the public, "the next step, would give all the world knowledge of the financial condition of any given defendant . . ." said the court. "A more tempting invasion of the right of privacy or violation of the right against unreasonable searches would be difficult to imagine."

That reasoning appeals to us as possessing validity.

Another argument for disclosure in states where statutes require motorists to provide financial responsibility by insurance (or otherwise) is that the injured plaintiff, as the ultimate beneficiary of the policy, has a sufficient interest in it to justify discovery: Ash v. Farwell, 37 F.R.D. 553 (D.C. Kansas 1965). Pennsylvania has a financial responsibility provision in The Vehicle Code of April 29, 1959, P. L. 58, secs. 1401, et seq., as amended, 75 PS §1401, et seq., and the same argument might be applied in our State. The argument has been rejected in such decisions as State ex rel. Bush v. Elliott, 363 S.W. 2d 631 (Mo. 1963), and Cooper v. Stender, 30 F.R.D. 389 (E.D. Tenn. 1962). We ourselves see no force in the argument.

As the author of the article in The Forum (cited supra) points out, as long as relevancy is the basic test for discovery, it is impossible to demonstrate in the ordinary case that the fact or extent of liability coverage will help prove or disprove the issues in a negligence suit. It might have some bearing on such a matter as the ownership of the vehicle involved; if so, it might possibly become relevant. We have no such situation here, and we need not decide such a point. In general, the author of the article concludes:

"Unhappily, no discernible trend has yet appeared in the cases, and a citation of authorities pro and con seems pointless. Ultimately, the resolution of the problem in any given case where appellate authority is lacking, may well depend upon locating a given judge to whom one or the other position appeals, a hardly satisfactory solution in a legal system which is consistently striving for greater and greater uniformity."

His concluding thought is illustrated perfectly in our own jurisdiction of Philadelphia County. We find an extensive discussion by retired Judge David L. Ullman, ending in an order for discovery, in Waksman v. Walker, 44 D. & C. 2d 1 (C.P. Phila. 1968). We find a longer opinion to the contrary by Judge Maurice W. Sporkin in Toogood v. Watkins, 46 D. & C. 2d 365 (C.P. Phila. 1969). We have had cited to us several unreported decisions at odds with one another by several other Philadelphia judges.

In Pennsylvania counties other than Philadelphia we find two decisions, both holding liability insurance not to be a matter for discovery: Howell v. Spatz, 14 D. & C. 2d 295 (1958); Covert v. Cingolani, 1 Butler 65 (1956). In the former the court regarded the demand for disclosure as an unreasonable search in violation of the Sixth Amendment to the Federal Constitution and also of article 1, sec. 8, of

the Pennsylvania Constitution. The court held also
that liability insurance was not relevant to the suit,
could not aid in drafting pleadings or in preparation
or trial, and could not lead to disclosure of pertinent
facts. The Butler County Court in the second case,
though recognizing that plaintiff's attorneys na-
turally wished to know about insurance while insur-
ance attorneys consistently opposed giving such infor-
mation, acted on the theory that insurance was not
pertinent to the issues of negligence and damages in-
volved in the average accident case.

We now reach the Pennsylvania Federal Court de-
cisions. We have three divergent views in our three
Federal District Courts. In McClure v. Boeger, 105 F.
Supp. 612 (E.D. Pa. 1952), Judge William H. Kirk-
patrick of our own district denied a request for dis-
covery of liability insurance. He granted that knowl-
edge of the amount of coverage might help plaintiff
decide whether to accept a settlement offer or deter-
mine how much time and expense the preparation of
the case warranted. But, he pointed out, every argu-
ment for disclosure of insurance applied with equal
force to compelling any defendant, in assumpsit as
well as in trespass, to disclose all his financial re-
sources. The mere fact that evidence of insurance
could not be introduced at the trial, he said, did not
necessarily forbid discovery (under the Federal rules,
of course, which we have pointed out are broader than
our State rules) ; but nevertheless he concluded "that
to grant this motion would be to unreasonably extend
that procedure beyond its normal scope . . ."

The Middle District ruled the diametric opposite.
In Slomberg v. Pennabaker, 42 F.R.D. 8 (M.D. Pa.
1967), Judge Frederick V. Follmer discussed the con-
tentions both ways. The primary argument of irrele-
vance, he remarked, was countered by the view that
if insurance is relevant after judgment for plaintiff,

it is relevant before. To the contention that since general assets are not discoverable before trial, insurance likewise should be privileged, he cited the reply that the two kinds of assets are in different categories. As to the effect on settlements, he noted that if disclosure of high limits is considered to retard compromises, decisions allowing discovery rely on the contrary theory that disclosure of low limits promotes settlements and eases court congestion. His own view leaned in the latter direction. Finally he mentioned the thought that the Pennsylvania Motor Vehicle Safety Responsibility Act, 75 PS §1401, et seq., was meant to benefit an injured person and supported the argument for discovery of insurance.

In the interim Judge Wallace S. Gourley of the Western District proposed an intermediate view. In Rosenberger v. Vallejo, 30 F.R.D. 352 (W.D. Pa. 1962), he discussed the opposing rulings, found merit on both sides, and suggested the avoidance of any "generalized, sweeping conclusion," and the consideration instead of each case on its own facts. Where liability was admitted and injuries substantial, but insurance limited, plaintiff ought to be informed at the outset, he said. But where liability was contested and doubtful, discovery in the early stages of the case was unjustified. Even so, he indicated, as the case advanced and the matter of liability became clearer, disclosure of coverage might bring about a settlement. At the time of the motion, however, he could see no advantage in disclosure. His opinion ends: "An appropriate order is entered." We assume the order denied the request for disclosure of insurance, but without prejudice to plaintiff's right to renew it at some later stage of the proceeding. Judge Gourley's view has won approval by dictum in Michigan: Pruitt v. M/V Patignies, 42 F.R.D. 647 (E.D. Mich. 1967).

We mention finally a ruling by our U.S. Court of Appeals in Beal v. Schul, 383 F. 2d 401 (3rd Cir. 1967). District Judge Ralph C. Body had sustained objections to a question seeking disclosure of liability coverage, and plaintiff, aware that the ruling was interlocutory and could not be directly appealed, attempted to circumvent the ban by asking the court of appeals to issue a mandamus against Judge Body. In a per curiam order giving no reasons, the court of appeals refused to issue the writ of mandamus. Circuit Judge Collins J. Seitz filed a dissenting opinion, not indicating his view on the merits of the controversy as to disclosure of insurance, but taking the ground that because of the conflict in the Federal decisions the writ was desirable to bring the matter up for a definitive solution in the interests of the orderly administration of justice.

In the absence of a majority opinion, we cannot make any firm inference from the case. We might surmise that if the court of appeals thought Judge Body was in error it would have issued the mandamus. On the other hand, the use of a mandamus as a subterfuge for an impermissible appeal is certainly irregular and would of itself justify the court's refusal. Hence we refrain from drawing any inference as to the merits of the dispute.

Our own conclusion is that the existence and amount of liability insurance are matters both privileged and irrelevant to the issues in the instant case. Such information cannot be used at the trial, and cannot aid in any permissible way either the preparation for or the conduct of the trial. Logic, therefore, in our judgment compels us to sustain the objection to plaintiff's sixteenth interrogatory.

Not to be too rigidly logical, however, we do concede that a judge conducting a settlement conference, where the injuries are severe and the liability clear,

638

may justifiably wish to know the fact of insurance, and more particularly the amount, as a guide to his own mediation efforts. We would favor a change in the procedural rules for that purpose. This is especially true if defendant's attorney has indicated that there is a limitation in the policy and plaintiff may have to look to defendant himself for any coverage beyond the policy limits.

We enter the following:

## ORDER

And now, to wit, May 5, 1969, the court, after hearing argument, sustains defendant's objection to interrogatory no. 16 addressed to him by plaintiff in the above entitled case.

The court orders further that plaintiff's interrogatories no. 13, 14 and 15 be marked withdrawn by plaintiff.